At this time, we'll hear Williams v. Finnegan. Good morning, your honors. Jeff Leon and my co-counsel, Nathan Zeperian, for the plaintiff appellant in this case. We're here today because we had district court judge, Judge Bryant, who erred in just about every way one could err in the handling of this case, from applying the incorrect procedural standard to the substantive motions in the case, to misapplying the substantive law governing the causes of action in the case, and to simply ignoring evidence, admissible evidence, that was inconvenient to the conclusions that she reached, and frankly, it was inexplicable. This case was filed after the Senate Commerce Committee, in a bipartisan report, condemned the very behavior at issue here, which led to a bipartisan Congress passing actual legislation. Bipartisan Congress is not a court. The Senate report is not sitting to decide what's a violation of existing law. It's sitting to decide what the law should be, and as you say, then they introduced a new law as a result of this. Your Honor, respectfully, I would note that this is evidence, not, and let me make my point specifically. Under 8038, the Senate report is admissible as evidence. The standard is, does the conduct have a tendency to deceive? That's exactly what the Senate Commerce Committee concluded. It said- That's the standard under which, that's the standard under the Connecticut law, isn't it? It is under Connecticut law, which is part of why we're here, right? Because- The only part of the Connecticut law that you're appealing is the retention program. I thought you were not appealing the ruling that dismissed the Connecticut claim insofar as it related to the sign up problem. No, we're appealing the whole kit and caboodle. This is, the entire process here was one designed to deceive consumers. Our plaintiffs certainly- Deceive them about what exactly? Deceive them that they were signing up for a program called Great Fund. I thought they were signing up for a program called Great Fund. They had no idea they were doing that. That's the very nature of the program. Why would they not have any idea when the screenshot of what they are saying, invites them to apply for Great Fund, and tells them that there is a membership fee? Your Honor, with all due respect to that screenshot, which you're looking at, which has been enlarged to essentially fit on an entire page, that is not the manner in which that particular screenshot is presented to the plaintiffs. Somebody's looking at it on a phone, is that? They could be looking at it on a phone or on a computer screen, which does not look like that because it's a pop-up screen. It doesn't pop up that way, and that's exactly part of the point. Do you have something in the record that shows how it looks on some type of computer screen? They haven't said that it looks the way that they put it in on a person's computer screen. Logic, common sense dictates that. Not only does it pop up, but you have to fill it in. No, barely, barely. And remember, we're dealing with what we're dealing with, and I personally, I refer to this as the Dr. Frankenstein School of Consumer Fraud scheme. Because if you take all of the learnings of marketing professionals and psychologists, and distill them into a way to try to come up with a scheme to defraud consumers while creating a patina of acceptance by the consumer to the scheme, this is it. And that's what our expert said, by the way, who was just disregarded by the district court. There wasn't a Daubert hearing. There wasn't a finding that the opinions of the expert were not scientifically reliable or relevant or anything. Just disregarded. The expert said that this scheme was intended, designed perfectly, to take advantage of known consumer tendencies. In fact, we had evidence. Isn't that what every ad on television is designed to do? Your Honor, it's intended to appeal to get people to actually purchase the thing they're purchasing. This was designed to evade people from realizing that they were purchasing what they ended up being charged for. The evidence in the record, and again, this is evidence, says the look and feel of the pop-up window was designed to make it seem like what you were doing was dealing still with the online retailer you were purchasing from. Why would that make a difference, by the way? Suppose this exact same thing was offered by the online purchaser, then it would not be a fraud? If it was? Yeah, excuse me, if Priceline had this same program and offered this same pop-up, would they be still defrauding the consumer? It might be. I would argue that it still is. I mean, why does it matter to the consumer whether this deal is offered by one merchant or another? Because why it matters is because the level of scrutiny. Our expert, again, explained this. There's a level of consumer expectation. Okay, so if you bought memorabilia, as one of our plaintiffs did from a particular online retailer, and this pops up and it looks like they're just offering you $20 back on your purchase for being a good customer, which is what they think it is, they don't look further to realize that, oh, we're dealing with this third party, some buying club we don't know anything about. There may be some trust you're saying between the consumer and the original. Yes, and that's exactly what our expert said, by the way, and again, not considered by the district court. She weighed the evidence. There is tons of conflicting evidence here. We have the testimony of our plaintiffs who say they don't remember any of this. They say they don't remember doing it. That's not exactly evidence. It is, because it's exactly the point. They don't deny it. That's proving a negative. They said, I didn't sign up to it. And then they put this screenshot in front of them and say, well, you must have seen this screenshot. And they say, I don't remember seeing this screenshot. That's the point. That's the entire point of the fraud, is to evade that detection. There are known tendencies. You put the big flashing caret, $20 cash back, and big letters. People don't see the other stuff. That's the point. And then this whole negative option billing and the data pass, which, by the way, has been outlawed by Congress because it was so insidious. The congressional findings alone, because it is admissible under 8038, creates a contested issue of material fact. You cannot weigh this. That's for a jury to weigh. The district judge did. She credited fully their position that, well, here's the disclosure. So you must have seen it, when they said they didn't remember it. And when we put in evidence that said that not remembering it is the very essence of the scheme, because it's designed not to be seen, it's designed not to be ingested by the person who's signing up for it. And the other evidence we have, which again, uncontested. They had this refund mitigation strategy. Why do you need that? Unless over 90% of your customers call because they want to cancel, claiming, I never knew I signed up for this. How about the fact that they run people around and they tell their call centers, now is the time to make the sale. When people call, we didn't do it. When they actually signed up for it, do it now. Sell the product now, now that they're calling to cancel. Or the fact that they had to create special procedures whenever somebody said attorney general or class action, because so many people did. This is all evidence, all evidence. And the Senate committee is an investigative committee. Okay, the district judge actually struck on 12F, the reference to the Senate committee report from the complaint, saying it's one-sided. I'm not sure I understood that ruling, and it didn't appear to me that in your brief you were contesting that ruling as such. What is the basis? You didn't tell me what was the basis for that ruling and why it was wrong. Well, she said, it appears the investigation's conclusions were not derived from the adversarial process, but from a one-sided factual inquiry. No, our brief addresses it and says that's not true. It was, in fact, an investigative report of a governmental body. There's no evidence in the record that it was a one-sided inquiry, that it wasn't adversarial. And that's not even the standard under Rule 8038. It's summary judgment just ignored on the same assumption. How do you make that assumption? Just assume that a Senate report without any evidence, without any hearing, is one-sided and therefore is to be ignored on Rule 12, let alone. You can't do it on summary judgment. Summary judgment, this is evidence, admissible evidence. They didn't argue it's not admissible under Rule 8038. They didn't go through the standards in the response brief on summary judgment and go through the six factors that a judge is supposed to apply. The law is clear under 8038, under this court's binding precedent, that it is presumptively admissible and presumptively reliable. And yet we have it discarded, along with everything else in the totality, which is the standard. This is a fraud. This is a whopper of a fraud. And we have a district court judge who expressed hostility to the very idea of it from the very beginning, as evidenced by her dismissal of a lengthy congressional investigation from the complaint, which certainly gives the complaint plausibility, as saying it's one-sided. That's for a jury to decide. Okay, you've reserved rebuttal. Thank you, Your Honor. I'll hear you then. May it please the court. My name is Ken Cleabard. With me is my colleague, Greg Fouts, on behalf of appellees. I first want to address the Senate report, because that issue's not briefed. The issue's not briefed because the appellants did not appeal from the district court's decision striking the Senate report. However- If it's stricken from the complaint, does that also mean it can't be considered as evidence at the Rule 56 stage? It could be considered at a later stage. The plaintiffs did not argue it as evidence in the summary judgment stage. And in fact, in some of the cases that we cite, talking about consent and double click and some of these other cases, there were ongoing investigations. And what the court said in those cases is, you can't use that as a surrogate for the plaintiff's own experiences. If the plaintiffs are alleging fraud, let them describe the fraud and prove the fraud. But you can't look at things like an investigative report or an expert witness report and use that as a surrogate. There's an important thing about the expert report, too, because a lot of ink and argument was devoted to that issue today. Council argues that issue as if it's a de novo issue for this court to consider for the first time. That's not correct. The district court acts as a gatekeeper in deciding whether to admit expert witness testimony. And that is evaluated under a deferential abuse of discretion or clear error standard of review. And in this case, there's no basis for this court to conclude that the district court abused its discretion or that its decision to exclude the expert was outside of the principle. Is there, when I was reading the briefs, I thought, well, that was a very good argument, except that I wasn't sure the district court handled the issue the way you wish it had. Is there a ruling that the expert testimony is inadmissible? Yes, it's discussed at the end of the district court's decision in a footnote. And for the record, we submitted an expert report, too, which the court didn't consider. But the point is, if you look at the consent cases that we cited, we cited the LS case, which, by the way, this court considered in a summary ruling and did not disturb the district court's finding that in a very, very similar enrollment process, where the consumer had to enter their email address twice, click a yes box, and next to that yes box, prominently displayed were the terms and conditions of the online enrollment, this court affirmed the district court's decision there. And so if you look at that case and the other cases that we cited in the brief, the Hager case, the Berry case, the Baxter case, the Vistaprint case, all involving very similar fact patterns. The decisions by those courts were decided as a matter of law. They did not- A scheme to defraud includes taking something of value by chicanery. Why isn't this chicanery? Why isn't what your adversary has just described, where you have a pop-up box, which on a iPad screen or on a handheld would be minuscule, and offers in big letters free everything, prizes and opportunities, and has a smaller type. That money's going to be taken out of your bank account. The reason that it's not fraud is because the plaintiffs had to go through a multi-step process to consent to the enrollment. Well chicanery, chicanery can be very elaborate. That's, you know, that's con man stuff. And on that point, the plaintiffs, again, don't point to a single thing in the disclosures that they say is fraudulent or deceptive. Well, what they point to is the structure of the physical disclosures designed to keep people from realizing what it is they're agreeing to. Why wouldn't that be chicanery? Because with due respect to this court, because I realize this issue has only been resolved at a district court level, but the myriad district court cases that we cite in our brief discussing this precise issue, plaintiff doesn't address them in his response, looked at this and said, any person who's capable of doing an online transaction with a retailer on the Internet, first you have to click on the banner ad to come to this page, the terms are plainly disclosed, you have to fill in information, in our case you have to create a password, you have to enter a personal bit of information, such as your mother's maiden name, city of birth, elementary school that you went to, and then you have to check a box. And right next to that yes button that you have to click in order to enroll is a disclosure that says, by clicking this yes box, I'm agreeing to, that Trilegion can receive my credit card information from the merchant, that can then charge me the monthly amount, and it will charge me this amount until I cancel. The decisions that we cite all deal with exactly that fact pattern. There's no evidence in this case that our print was bigger or smaller than it was in any of those cases. And in fact, on the issue, so all we basically have is an expert, who by the way, did not study any of the plaintiff's online enrollments, did not do an empirical study. It was one of these I know it when I'll see it type situations, and that's exactly what the plaintiff tried to do in the Hager versus Vertru case, which is one of the cases that we cite in our brief. Are you saying that the expert did not look at the text of the pop-up ad or the banner? He looked at some of the ads, but he did not study the facts and circumstances of the plaintiff's enrollments, and he didn't conduct any empirical study. He just said, I know chicanery when I see it, and that's the type of thing that is insufficient to justify an expert. He did not do a survey. Correct. Of people saying, look at this ad, tell me what you think. Correct, and we had an expert report. I know in the appellant's brief they said we didn't have an expert report, that's not true. We had an expert report that said you do need to conduct a survey in these kinds of cases. Again, it's an abuse of discretion standard in this court. It was within the discretion of the district court, given that just about every court that has decided this issue has decided it as a matter of law and has rejected the use of an expert witness to come in and wave a magic wand. In the footnote you referred to, the district court says the court questions the admissibility of the plaintiff's proffered expert testimony as to the motive or intent of the marketing design. The trier effect is unlikely to need an expert opinion. That's something short of saying this is inadmissible, I am excluding it from consideration. I would agree that it would have been better for purposes of this appeal if the language and the decision had been more precise, but that the fact that she did not consider either our expert witness or their expert witness in deciding the issue of whether these particular named plaintiffs had indicated their consent to the online terms by going through each of those items on the web pages they had to, and as the evidence is undisputed, they had to do in order for them to become enrolled in one of these memberships. These pop up ads appeared with the permission of Priceline and Buy.com? That's correct, your honor. Any other companies? Yeah, there were a number. There were dozens of companies, frankly, and Troy Legion, my client, was not the only person or company that did this in the industry. There were many companies that did, and that's why we have a lot of district court decisions analyzing this issue. And so the way the process starts is my client enters into a contract with one of these e-merchants and gets permission to place a banner ad just like if your honor uses, I'm not suggesting you use Facebook, but if you click on Facebook or the weather forecast, you tend to get pop up ads, and if you click to them, you get to an offer screen, whether it's to take a vacation or buy a new cell phone, and that's how these work. And the customer first had to click on that banner ad, and then they were taken to a separate page that presented them with a membership offer. And again, they had to do a number of things to clearly indicate their consent in order to be enrolled. There was no default option that if you clicked on that banner and went to that page, you were enrolled. You had to fill in the password created by you, the personal identifying information, such as mother's maiden name, and then click the yes button. Just to get clarity, because I may have misunderstood something, the exhibits that are in the record that show the screenshots, that is a page that you're saying the consumer gets to after clicking on a banner ad? That's correct. So the banner ad pops up and just says, what? Is there something in the record that says what the banner ad says? The evidence is, and we never got, we briefed class certification, we never got a decision on that because summary judgment came first. It was presented in a lot of different ways depending on the arrangement with the particular retailer. But you had to click on something in order to get to what was called this interstitial page that then presented you with the offer. I see, because I thought the plaintiff's argument was that this page pops up whether you like it or not as you're trying to buy something from one of these companies. If there's evidence in the record that that happened in some instances, I certainly don't believe that happened in all instances, that's not my understanding. And again, there was no default that you had to, at that point, the order was already complete with the online retailer. There's other cases out there where that wasn't the case, where before you could actually complete your purchase, you had to go through this form. At that point, the purchase transaction was complete with the retailer. And by the way, there's other things that the plaintiffs overlooked. When you say the transaction was complete, again, I just want to understand exactly what that means. I thought that the plaintiff's brief suggested that even if it was somehow irrevocable, there was no confirmation or you didn't sort of get out of the transaction with the original retailer until after you had seen this. But again, that was partly also premised on my understanding that they were saying this pops up. You give your credit card information, you say, place my order now, and then my impression from them was, this pops up. This being what is in the record as the screenshots. Is that- I'm over my limit, may I? Go right ahead. So, the evidence in the record is that the transaction was always completed by the time they were presented with this offer. There was nothing else they had to do in order, if they could have turned off their computer at that point, and then the shoes or the airline tickets that they bought would have arrived. Yeah, but a lot of people would like to see a confirmation page or a receipt page that they can have. I'm questioning what it means by the purchase was complete. The fact that they would get charged for their purchase doesn't, in most consumers' eyes, mean that they're confident that the transaction is complete until they get something that says, thank you for your purchase. And I'm trying to figure out, is there evidence in the record of that? I don't believe there's evidence in the record of that. What there is evidence of the record, though, because I think it is a good point, consumers do want to see that there's confirmation. If the consumer entered the information, click yes, indicating that they agreed to the membership, they were taken to a confirmation page that confirmed that they had just bought this membership. I see. And then they would get an email that was sent to the same email address that they used for the retailer transaction, so we know it's a good email address. Confirming the membership, giving a link to the website, link to additional terms and conditions. So they certainly got a confirmation that they enrolled. This is not the insidious plot. They had monthly notices thereafter. Correct, on the credit card statements, and it had my client's toll-free telephone number, an abbreviation of the membership name. It appeared every month. The plaintiffs in this case testified that they reviewed their billing statements when they received them. So certainly they had notice of it, and yet they continued to remain members. Thank you. Thank you, Reynolds. What you just heard was precisely the type of disputatious dissection that this court has cautioned courts are not supposed to engage in when evaluating a fraudulent scheme, particularly a manner scheme. Everything Mr. Cleabart said would suggest that nobody should claim to have been confused or defrauded by the scheme. But there were tens of thousands of people who said they had no idea they did it, which is proof in and of itself it gets to a jury. They had no idea they did what? That they signed up for this Great Fun product. Every step was designed to evade that knowledge. Even the confirming email that you got just says, welcome to Great Fun. When you get a million spam emails in your inbox and you don't know what Great Fun is, you have no idea that that really means what they say it is. And if you look at the actual email, which is in the record, it doesn't say anything about what it costs you, recurring charges, or anything. It just says, if you have questions, go to our website. Questions about what? They don't know. Disputatious dissection. The district court, he said it acts as a gatekeeper. But take a look at footnote, did I not grab it? There is a relevant footnote of the district court where she disregarded Dr. Kamens just saying we haven't identified a theory of fraud, therefore his opinion couldn't explain it. That's not how you get rid of an expert. Everything you heard Mr. Cleabart said wasn't in the record or decided by the district court, and it's not true, by the way. That's evidence. The Senate Commerce Committee report, he said it wasn't briefed. I don't know what he's talking about. Issue on appeal number ten explicitly deals with the district court striking that from the complaint. And in the issue on appeal regarding the summary judgment standards, we discussed the Senate Commerce Committee report as evidence that the district court disregarded. They chose, in their response to summary judgment, not to argue that it was inadmissible under 8038. And the district court didn't exclude it, saying it was inadmissible under 8038, it just ignored it. It's admissible evidence. All of this evidence, in its totality, creates a tribal issue of fact. And in fact, all this information he said on the plaintiffs, they only have one of our four plaintiffs that they actually provided the enrollment screen for. So they don't actually have proof that the other three plaintiffs, according to their so-called enrollment screen, enrolled. Which of course, they didn't really enroll. But that's what they call it, insidious language, like calling a nuclear missile peacekeeper. The monthly notices are another thing which, again, take advantage of known consumer tendencies. Why would tens of thousands of people allow these charges to rack up month after month not knowing what they are? because people don't look, they don't study, they don't scrutinize. And that's the business plan, to take advantage of people's known tendencies. Their worst, laziest tendencies. That's fraud. That is a manner fraud. That is not for a district judge to decide, taking all the evidence and the like most favorable to the plaintiff. And not resolving disputed evidence at summary judgment. That's a jury issue. Thank you. Thank you, Your Honor. Thank you both. We'll reserve decision.